UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No: 2:25-cv-429 |
| | ) | |
| v. | ) | |
| | ) | |
| Tether (USDT) held in four Target Wallets, | ) | |
| with the listed balances as of November 1, 2021 | ) | |
| (for a total of 6,610,573.440928 USDT/ETH), | ) | |
| | ) | |
| *Defendant.* | ) | |

# DECLARATION

I, Andrew C. Braley, pursuant to 28 U.S.C. § 1746, declare as follows:

1.  I have been employed as a Special Agent with the Federal Bureau of Investigation (FBI) since June of 2021. I am currently assigned to FBI's Albany Office, investigating cybercrimes including computer intrusions and fraud related crimes. I also have experience working counterintelligence matters. As a Special Agent with the FBI, I have received training related to cyber security and open-source intelligence, and I have participated in the execution of search warrants involving electronic evidence, including searches of email accounts and computers.

2.  The facts set forth in this affidavit are based on my personal knowledge, including what I have learned through my training and experience as a law enforcement officer, my review of documents and other records obtained in the course of this investigation, and information I have obtained in the course of this investigation from witnesses having personal knowledge of the events and circumstances described herein and other law enforcement officers, all of whom I believe to be truthful and reliable. I have not included in this affidavit every detail I know about

this investigation. Rather, I have included only the information necessary to establish probable cause that the property is subject to forfeiture.

3. I submit this affidavit to show probable cause to believe that the defendant Property, described below, constitutes proceeds of a "pig butchering" fraud scheme, was derived from such proceeds, or was involved in the commission of a fraudulent offense, in violation of Title 18, United States Code, Sections 1349 (conspiracy to commit wire fraud), 1343 (substantive wire fraud) and 1956(h) (conspiracy to commit money laundering), and therefore is subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).

4. The defendant Property is described as:

   a. Tether (USDT) held in four Target Wallets, with the listed balances as of November 1, 2021 (for a total of 6,610,573.440928 USDT/ETH):
      i. Target Wallet 1 (0x42D8568C56C44E070f51fF9D268b6388EF2f846D): USDT/ETH 1,275,940.00;
      ii. Target Wallet 2 (0x1097850B35dFeCD1B7e7CE9190aEba45c6c2b1E9): USDT/ETH 1,330,000.55;
      iii. Target Wallet 3 (0x6f2f58817dB62A31A0253495c7550444958daF17): USDT/ETH 3,121,468.387334; and
      iv. Target Wallet 4 (0xa0e283a75e498FEcaE3A5bD0170D89B9FC26BCe8): USDT/ETH 883,164.503594.

5. The Property is currently in the custody of the U.S. government. The USDT described in subparagraph 4A was seized pursuant to a warrant issued in this Court on August 12, 2024. *See* 2:24-mj-82.

**Facts Supporting Findings of Probable Cause**

6. Since on or around September of 2021, the United States Secret Service and the Federal Bureau of Investigation (the "Investigating Agencies") have been investigating a fraud scheme being used to steal fiat currency and cryptocurrency from individuals located

2

throughout the United States. The scheme utilizes the social engineering of victims who independently navigate on the Internet to platforms for stock and/or cryptocurrency investment advice. While on these platforms, the "threat actors" purporting to be investment experts convince these victims to navigate to specific website URLs where they download fraudulent investment platforms to their electronic devices. The fraudulent investment platforms appear to be legitimate cryptocurrency exchanges where the victims can log in and see their investments grow. However, as soon as the victims send their cryptocurrency, the funds begin making their way through a complex laundering scheme. Since at least February 2021, victims of the scheme have been convinced to transfer custody of their cryptocurrency and/or fiat currency to the Target Subjects under the guise of customer deposits to these cryptocurrency exchanges. The victims later discovered they were unable to withdraw funds they deposited to their accounts, and in some cases, they were extorted for more cryptocurrency or fiat currency when attempting to withdraw. At this time, the FBI has identified approximately 120 victims with losses of approximately $9,547,180.00 associated with this scheme.

7.  On 12/13/2023, FBI Agents executed a search warrant issued out of the Eastern District of Texas to search the residence of Feng Chen and Tianqiong Xu at 1039 Echols Drive, Frisco, Texas, 75306 (the "Residence"). A copy of the affidavit in support of the search warrant for the Residence is attached as Exhibit 1 and incorporated herein.

8. The following items were located at the Residence and identified as belonging to Feng Chen:

   a. A notebook containing the word "clex" [1] followed by two entries of the cryptocurrency Tether, commonly known as "USDT" valued at 16643 USDT and 26049 USDT. The same notebook contained a page labeled "BFEX" that contained IP addresses with passwords, appearing to be root credentials to servers.

   b. An external hard drive containing numerous folders with source code for websites inside compressed zip folders. There is a folder named "bnbdt-backend-master.zip" and a folder named "bnbdt-frontend-main.zip".

   c. A folder labeled "BFEX" that contains the source code for the website, "bf-ex.com".

   d. Three notebooks containing handwritten cryptocurrency wallet seed phrases for MetaMask, imToken, Token Pocket, Trust Wallet, and TronLink [2].

   e. Precious metals to include:
      i. Approximately four (4) mini "PAMP" gold bars, weighing approximately 124.406 grams;
      ii. Approximately two (2) foreign pieces of silver metal, weighing approximately 53.2 grams; and
      iii. Approximately four (4) circular pieces of gold metal, weighing approximately 122.7 grams.

9. Following the FBI search of the Residence, the source code for the website "bf-ex.com" that was identified on an external hard drive (as described under item "c." of the above

---

[1] CLEX LTD. is a company that was listed as the subscriber on the GoDaddy account that registered the domain bf-ex.com and many other fraudulent cryptocurrency exchange domains used in pig butchering schemes.

[2] MetaMask, imToken, Token Pocket, Trust Wallet, and TronLink are types of cryptocurrency wallets. Cryptocurrency wallets are software programs that interface with blockchains and generate and/or store public and private keys used to send and receive cryptocurrency.

referenced list) was opened using a web browser by FBI personnel. The examination revealed that the website appeared the same as images provided to investigators by victims of the scam. Additionally, FBI personnel conducted database checks using file names identified on the external hard drive that contained the folders named "bnbdt-backend-master.zip" and "bnbdt-frontend-main.zip" (as described under item "b." of the above referenced list). It was determined that source code and other computer files located on the drive were associated with numerous other fraudulent cryptocurrency investing platforms.

10. At the time of the search of the Residence on 12/13/2023, FBI Agents interviewed Chen and Xu separately. During the interviews, Chen and Xu made the following statements:

   a. Both Chen and Xu indicated Chen's only official source of income is his employment with Justice Benefits Inc., a job which pays approximately $100,000.00 to $110,000.00 per year.

   b. Chen admitted to working with scammers and receiving payments for services he provided in cryptocurrency, specifically payments made to a Binance account which Chen claimed has been funded by both him and by his parents-in-law. Chen stated that while not having in-depth knowledge of cryptocurrency, his parents-in-law use his cryptocurrency accounts. Throughout the interview, Chen also appeared to attempt to conceal financial information, including denying the extent of his involvement with cryptocurrency, not being forthcoming in disclosing significant cryptocurrency assets in his control, and not providing reasonable explanations for movements of cryptocurrency funds in his control.

   c. While both Chen and Xu stated during their interviews that the Property was purchased with a significant amount of assistance – primarily from Chen's parents

who are Chinese citizens – their statements regarding the means by which they received funds from their parents were not consistent. Chen stated that funds from his parents were converted to cryptocurrency in order to be sent from China to the U.S. But Xu, despite being the primary account holder of a joint Bank of America account that received approximately $1.6 million dollars' worth of funds from bank accounts belonging to her husband's parents in the months preceding the purchase of the Property, made no mention of cryptocurrency in connection with the home purchase. Xu only referenced money being sent from China to the U.S. with the assistance of friends of her Canadian-based uncle.

11. Based on my training and experience, even with significant funding from their parents, Chen and Xu lived in a residence that does not align with their status and employment. Specifically, their single income of approximately $100,000.00 to $110,000.00 per year does not appear to support their 2022 purchase of a home and property valued at $1.3 million while retaining their prior home.

12. Throughout the investigation, FBI traced funds stolen from victims of the scheme in an attempt to locate the money. As shown below, FBI traced funds taken from Victim 1 through a set of intermediary cryptocurrency wallets (platform deposit addresses) into a series of wallets designated as "laundering addresses" which collected funds from multiple victims of the scheme:

6



13. Some of the funds from the laundering addresses in turn were traced to a Binance account for which email address fchen1024@gmail.com was registered. Further investigation identified an association between the account fchen1024@gmail.com and both Chen and Xu, and identified Chen as the owner of the account.



14. Following the search of the Residence in December 2023, approximately 558,726 USDT was withdrawn from the Chen/Xu Binance wallet, leaving almost no USDT remaining in the account. This withdrawal was the first from the account since April of 2023.

15. Although most of the victim funds directed into the Chen/Xu Binance wallet were withdrawn, investigators traced funds from several victims through a series of intermediary wallets to four cryptocurrency wallet addresses that held USDT. Review of financial records and analysis of blockchain transactions determined the funds identified in the Target Wallets as property derived from and involved in the fraud scheme or proceeds of such property. On

August 12, 2024, the government obtained a seizure warrant for the USDT in those Target Wallets, with the listed balances as of November 1, 2021 (for a total of 6,610,573.440928 USDT/ETH):

  i. Target Wallet 1 (0x42D8568C56C44E070f51fF9D268b6388EF2f846D): USDT/ETH 1,275,940.00;
  ii. Target Wallet 2 (0x1097850B35dFeCD1B7e7CE9190aEba45c6c2b1E9): USDT/ETH 1,330,000.55;
  iii. Target Wallet 3 (0x6f2f58817dB62A31A0253495c7550444958daF17): USDT/ETH 3,121,468.387334; and
  iv. Target Wallet 4 (0xa0e283a75e498FEcaE3A5bD0170D89B9FC26BCe8): USDT/ETH 883,164.503594.

16. On April 17, 2025, Tether honored the seizure warrant by transferring the value of the Tether in the four wallets to a wallet controlled by U.S. authorities.

## Conclusion

17. Based on the information set forth above and on my training and experience, I believe there is probable cause that the defendant Property constitutes proceeds of a "pig butchering" fraud scheme, was derived from such proceeds, or was involved in the commission of a fraudulent offense, in violation of Title 18, United States Code, Sections 1349 (conspiracy to commit wire fraud), 1343 (substantive wire fraud) and 1956(h) (conspiracy to commit money laundering), and therefore is subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 22, 2025.

*/s/ Andrew C. Braley*
Andrew C. Braley, FBI Special Agent